# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

| | | |
|---|---|---|
| JOHN BROWN, JR., and<br>JAVONNA BROWN, | ) <br> ) <br> ) | |
| Plaintiffs, | ) <br> ) | |
| v. | ) <br> ) | CV419-303 |
| SSA ATLANTIC, LLC, | ) <br> ) <br> ) | |
| Defendant. | ) | |

## ORDER

This personal injury case was removed from the State Court of Chatham County, Georgia. *See* doc. 1 (Notice of Removal). Before the Court is defendant SSA Atlantic, LLC's (SSA) Motion for Sanctions for plaintiff John Brown, Jr.'s alleged spoliation of electronically stored evidence, specifically his social media accounts. *See* doc. 30.

Before discussing the issues implicated by the motion, the Court must address the briefing. If the briefing proves nothing else, it shows that the attorneys in this case are frustrated with each other. As both note, the tone of their respective briefs is, to say the least, testy. *See, e.g.,* doc. 38 at 2 (stating that the defendant's motion was motivated by a concern that "[t]he chance to distract with conspiracy theories and

innuendo might be lost or destroyed."); doc. 41 at 2 (noting that plaintiff's brief is "indignant," and "angry"). Of particularly dubious distinction in this regard is SSA's otherwise inexplicable discussion of plaintiff's criminal history. *See* doc. 30 at 3. While the adversarial system is a fundamental, and often salutary, element of American civil justice, it can have unintended, less salutary, consequences. The briefing here is a lamentable example of the latter.

## I.    BACKGROUND

This case arises out of a vehicle collision. Plaintiffs' Amended Complaint alleges:

> On August 13, 2019, Plaintiff John Brown, Jr. was assigned to drive a jockey truck by his employer . . . . The assigned jockey truck was parked in a parking space . . ., and as Plaintiff . . . was entering the cab through its back doors . . . , an employee of Defendant . . . attempted to pass the vehicle. [That employee], misjudging his clearance and traveling at an excessive speed, struck the flatbed trailer which was attached to Plaintiff['s] jockey truck. As a result of the tremendous impact, Plaintiff . . . , was ejected through the back doors of the jockey truck cab, ultimately landing on the flatbed trailer.

Doc. 14 at 2, ¶ 7. As a result of the collision, John Brown allegedly sustained injuries. *Id.*, ¶ 8. Plaintiffs have asserted various tort claims, based on a theory of *respondeat superior*, against SSA, including

negligence, negligence *per se*, and loss of consortium on behalf of plaintiff Javonna Brown. *Id.* at 3–4.

The parties conducted discovery; as relevant to this motion plaintiff John Brown[1] responded to defendant's requests for production of documents, *see* doc. 30-2, and defendant deposed plaintiff John Brown, *see* doc. 30-1. *See generally* doc. 30 at 1. In both the deposition and written discovery responses, Brown disclosed one Facebook account. *See* doc. 30 at 1; *see also* doc. 30-1 at 12 (plaintiff refers to a singular Facebook "account"); doc. 30-2 at 7 (plaintiff's response, subject to his objection, discloses a "Facebook account" that was deactivated). In his written response plaintiff claimed he had deactivated the account before the collision occurred, but in his deposition, he conceded it was deactivated after the collision. *See* doc. 30-1 at 12 (plaintiff's statement that he "deactivated [his Facebook] account" and that he deactivated it after the "incident" at issue in the lawsuit); doc. 30-2 at 7 (plaintiff's response, subject to his objection, that "his Facebook account was deactivated prior to the subject incident," to the requested production of Facebook account

---

[1] The requests and responses refer to plaintiff John Brown exclusively. *See* doc. 30-2 at 1. Since the discovery at issue relates solely to plaintiff John Brown, the Court's references to "plaintiff" or "Brown" refer to him alone.

3

data "for the period of January, 2018 through present"). Defendant also alleges that it has discovered Plaintiff has at least two other Facebook accounts, and possibly four, that were undisclosed. Doc. 30 at 11. Plaintiff's response effectively concedes that he had no fewer than three "burner" accounts. *See* doc. 38 at 8–9. Defendant requests that Plaintiff's complaint be stricken as a sanction for the alleged spoliation, or, alternatively the jury should be instructed to draw an adverse inference. *Id.* at 2. Failing either of those sanctions, SSA requests that plaintiff be ordered to produce the requested account information. *Id.* at 2–3.

Plaintiff objects that defendant failed to seek an informal resolution of this issue before filing its motion. *See* doc. 38 at 9–12. He also responds with the suggestion that the Facebook information may yet be retrievable, if he "reactivated" his account. *See id.* at 13. SSA replies that motions for spoliation sanctions are not governed by the provisions of the Federal Rules related to discovery, and so they are subject to neither the Rules' requirement of attempts at informal resolution nor the requirements of the undersigned's standing order. *See* doc. 41 at 3–4.

As discussed more fully below, the Court ultimately agrees with both parties. SSA is correct that plaintiff's discharge of his discovery

4

obligations has been woefully deficient. Plaintiff is correct that the discovery-dispute procedures would have provided a more appropriate avenue to raise the issue. What plaintiff, unfortunately, fails to appreciate is that SSA's failure is, at most, a procedural gaffe. His own conduct, as SSA points out perhaps too emphatically, is much more troubling.

As this Court has previously been compelled to explain, "litigation is not an exercise in catching one's opponent in some technical misstep to secure advantage. It is a search for truth and justice. The procedural rules should facilitate that search, not impede it." *Higgins v. City of Savannah, Georgia,* 2018 WL 777164, at * 5 (S.D. Ga. Feb. 8, 2018). Then, as now, "[t]his Court will not abide *any* party or counsel's attempt to reduce its procedures to a game of 'Gotcha!'" *Id.* Plaintiff's response appears to be little more than an attempt to hide a substantive mountain behind a procedural molehill. If that was his intent, it has failed. Given the Court's broad discretion to manage discovery, *see, e.g., Perez v. Miami-Dade Cnty.*, 297 F.3d 1255, 1263 (11th Cir. 2002), and the Federal Rules' injunction that procedure should be administered "to secure the just, speedy, and inexpensive determination of every action and proceeding," Fed. R. Civ. P.

1, the Court will endeavor to resolve the discovery dispute without further delay.

## II. ANALYSIS

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Brown v. Chertoff*, 563 F. Supp. 2d 1372, 1377 (S.D. Ga. 2008). The Court has "broad discretion" to impose sanctions as part of its "inherent power to manage its own affairs and to achieve the orderly and expeditious disposition of cases." *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005). Spoliation sanctions may include dismissal, exclusion of testimony, or an instruction to the jury to presume that the evidence would have been unfavorable to the spoliator. *Id.*

Plaintiff makes much of SSA's failure to engage in informal discovery dispute processes. *See e.g.,* doc. 38 at 10 (referring to the failure to engage in informal resolution of the dispute as "inexcusable"). However, SSA plausibly argues that motions for spoliation sanctions are treated differently than other discovery disputes. *See* doc. 41 at 3. As SSA's brief points out, *see* doc. 41 at 3, courts have not treated motions

alleging spoliation of evidence exclusively under the Federal Rules of Civil Procedure. *See, e.g., Sosa v. Carnival Corp.*, 2018 WL 6335178, at * 8 (S.D. Fla. Dec. 4, 2018) ("A district court's power to sanction a party for spoliation of evidence derives from two sources: (1) the Federal Rules of Civil Procedure and (2) the court's inherent power to control the judicial process and litigation." (citations omitted)); *see also McLeod v. Wal-Mart Stores, Inc.*, 2012 WL 2930769, at * 3 (S.D. Ga. July 18, 2012) ("Federal courts have broad discretion to impose spoliation sanctions against litigants as part of their inherent power to manage their own affairs."). To the extent that such a motion invokes the Court's inherent power, and not the Federal Rules, it is, at best, unclear whether the Rules-derived requirement of a conference applies; regardless of whether that requirement is imposed by the Rules themselves or from the Court's orders invoking them. *Cf.* doc. 5 at 5 (imposing discovery dispute resolution procedures to "any motions filed pursuant to Title V of the Federal Rules of Civil Procedure").

    The Court does, however, agree that SSA's presentation of this issue as a motion for spoliation sanctions, pursuant to the Court's inherent power, is perhaps not the most natural. In the first place, despite the

defendant's characterization, it is not clear that any evidence has been *spoliated*, as opposed to withheld. Defendant's brief explains the distinction between "deactivating" and "deleting" a Facebook account. *See* doc. 30 at 6 n. 4 (quoting *Bruner v. City of Phoenix*, 2020 WL 554387, at * 3 n. 6 (D. Ariz. Feb. 4, 2020). As the Court in *Bruner v. City of Phoenix* explains, "deactivation" primarily prevents third-party access to the Facebook account, and "reactivation" remains possible. *Bruner,* 2020 WL 554387, at * 3 n. 6. "Deletion," in contrast, "is a much more permanent step, and it means that the account information will be erased from the site completely." *Id*. SSA does not dispute that, based on the information currently available, Brown has only "deactivated" and not "deleted" his Facebook account(s). *See, e.g.,* doc. 30 at 4–6.

Despite recognizing the distinction between deactivation and deletion, SSA contends "[d]eactivation of Facebook accounts during discovery constitutes spoliation." Doc. 30 at 13. The cases it cites do not, however, suggest that deactivation amounts to spoliation, as opposed to a more generalized discovery violation. In *Bruner,* the principal case cited, the court cites to discovery rules—Rules 37 and 26, *see* 2020 WL 554387, at *6 (D. Ariz. Feb. 4, 2020)—but never once mentions "spoliation."

8

Moreover, the motions at issue were brought pursuant to Rule 37. *See Bruner*, CV218-664, doc. 86 at 1 (D. Ariz. July 11, 2019), doc. 99 at 1 (D. Ariz. Aug. 20, 2019). Finally, *Bruner* involved allegations of deletion of data, not merely deactivation of the account. *See Bruner*, 2020 WL 554387, at * 2 (discussing the court's finding that one of the plaintiff's deleted at least one Facebook post). The other cases cited recite similar information. *See D.O.H. v. Lake Central School Corp.*, 2015 WL 736419, at * 3, * 9 (N.D. Ind. Feb. 20, 2015) (considering sanctions pursuant to Rule 37 and noting the party's admission "that he deleted some posts from his Facebook account on the day of the assault and acknowledged that he possibly deleted other posts prior to the court order requiring the preservation of evidence."); *see also* doc. 30 at 14-15 (quoting *Painter v. Atwood*, 2014 WL 1089694, at * 9 (D. Nev. Mar. 18, 2014) (noting "the deletion of a Facebook comment is an intentional act")). None of those cases, then, stand for the proposition that "deactivating" a Facebook account, without concomitant destruction or irremediable alteration, amounts to spoliation.

To the extent that court-ordered production of the material remains as a potential form of relief, Rule 37 appears to be a more natural

procedure. *See* Fed. R. Civ. P. 37(a)(3)(B)(iv) (motion to compel production of documents). Indeed, even if plaintiff's conduct were sufficiently willful to warrant sanctions, Rule 37 includes applicable provisions. *See* Fed. R. Civ. P. 37(a)(4) (evasive or incomplete responses are to be treated as failures to respond); (d) (motion for sanctions for failure to respond to request for production of documents). Finally, Rule 37(e) includes specific procedures applicable "[i]f electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). Given the facts as they currently appear, SSA might have used those procedures to secure the relief it seeks.

However, the Court, and possibly the parties, simply can't tell from the pleadings whether information has, even allegedly, been irretrievably lost. *See, e.g.,* doc. 41 at 8 ("There is no way to determine, without the account information that was originally requested in discovery, whether Brown has postings he shares with "Friends" but not with the general public, or whether he has deleted information."). If the information has not been *destroyed*, but "only" withheld, Rule 37, with its attendant

prerequisites, provides a more appropriate procedure. In the absence of a clear showing that information has been destroyed or significantly altered, the Motion for Spoliation Sanctions is **DENIED, in part**. Doc. 30.

Although the Court disagrees with SSA's procedural choice, the substance of its motion is spot on. Brown's alleged conduct related to the social media discovery, which he never really disputes, is troubling. The defense of his objection to the written request is dubious, at best.[2] *See* doc. 38 at 8. Although he tries to brush off the issue as harmless, plaintiff

---

[2] This Court has specifically rejected the argument that discovery of social media accounts amounts to a "fishing expedition." *See Bryant v. Perry*, 2010 WL 11590650 at * 1 (S.D. Ga. Apr. 22, 2010). It has also specifically rejected the argument that a party seeking to discover social media posts must make a threshold relevance showing to do so. *See Jacquelyn v. Macy's Retail Holdings, Inc.*, 2016 WL 6246798 at * 7 (S.D. Ga. Oct. 24, 2016) (the Westlaw citation misstates the case name of *Orr v. Macy's Retail Holdings, LLC*, CV416-052 (S.D. Ga.), for clarity the Court refers to the case by the Westlaw name). *Jacquelyn* expressly considered, and rejected, the approach of the Eastern District of Michigan in *Tompkins v. Detroit Metro Airport* that plaintiff relies upon. *See* doc. 38 at 8; *Jacquelyn*, 2016 WL 6246798 at * 7 (discussing *Tompkins*, 278 F.R.D. 387 (E.D. Mich. 2012), declaring itself "unconvinced" of its merits, and requiring disclosure of Facebook data). *Jacquelyn* also explains the presumptive relevance of social media data in a personal injury case. *See id*. (noting that the plaintiffs' "physical condition and . . . quality of life are both at issue in this case, [cit.], plaintiffs' Facebook postings reflecting physical capabilities and activities inconsistent with their injuries are relevant and discoverable," and collecting cases). Similarly, here, John Brown's "physical and mental pain and suffering and permanent impairment" are expressly listed as elements of his damages. Doc. 14 at 2, ¶ 8; *see also id*. at 4, ¶ 21. Given this Court's prior treatment of arguments virtually identical to plaintiff's objection, it cannot agree with his contention that those objections are "well founded." Doc. 38 at 8. However, as discussed below, plaintiff's evasive and incomplete response to the request waives any objection, rending its merits, if any, moot.

concedes that his response was inaccurate when it was provided. *See id.* at 8 (conceding that plaintiff created other Facebook accounts "years ago," *i.e.* before he disclosed his, singular, deactivated "Facebook account"). The concluding contention that "there are appropriate procedures" SSA could have used to gain access to the deactivated Facebook account, *see id.* at 13, is particularly brazen, given that the original discovery request seems like *exactly* the "appropriate procedure," which Brown's inadequate response obstructed. Even if a conference was technically required, *plaintiff* might have mooted the issue by producing the requested material when the motion was filed or initiating the meet-and-confer process himself. Despite his response effectively conceding that his original discovery response was defective, plaintiff *still* does not propose to make good his failure. *See* doc. 38 at 13; *see also* doc. 41 at 8 (stating that plaintiff "never produced his Facebook materials" (emphasis omitted)). In the absence of any indication that he—or perhaps more accurately his attorneys—took any of those good-faith steps, the brief's indignation rings particularly hollow.

Although the Court cannot find that any evidence has been spoliated, under the circumstances it need not wait to rectify the situation. Since

plaintiff's brief effectively concedes that his response to the written discovery request was "evasive or incomplete," his objection is deemed waived.[3]  *See Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613, 617 (5th Cir. 1977) ("[S]ince an evasive or incomplete answer is equated with failure to answer, the [responding party] did, under the law, fail to answer, thus waiving any objections to [the discovery request].")[4]  The Court, therefore, **GRANTS** SSA's alternative request to compel production of the Facebook data.  *See* doc. 30 at 2–3.

Brown is **DIRECTED** to produce account data for the period of January 2018 through the present for *each* Facebook account he maintains or maintained, whether the account is "deactivated" or not, to SSA by no later than seven (7) days after the entry of this Order.  SSA's request for attorneys' fees, doc. 30 at 3, however, is **DENIED**.  *See* Fed. R. Civ. P. 37(a)(5)(A)(i).  If, upon review of the material produced, SSA concludes

---

[3] The response clearly states that plaintiff's "Facebook account was deactivated *prior* to the subject incident."  *See, e.g.,* doc. 38 at 7 (quoting doc. 30-2 at 7).  However, plaintiff's response brief concedes that the chronology was inaccurate.  *See id.* at 8.  He also concedes that it was incomplete in failing to identify his other Facebook accounts.  *See id.* at 9.  Whether or not the response was willfully deceptive, it is clearly not what the Federal Rules require.

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions that were handed down prior to the close of business on September 30, 1981.

13

that additional, limited-purpose, discovery is necessary, the Court will consider modification of the Scheduling Order. If SSA concludes that substantive information was, in fact, lost or destroyed because of the "deactivation," it is free to renew its motion for spoliation sanctions.

### III. Potentially Improper Certification of Discovery Responses

Although the Court cannot find that spoliation sanctions are appropriate, plaintiff's own argument exposes a deeper problem that the Court cannot ignore. The Federal Rules of Civil Procedure impose a duty on attorneys to sign discovery responses, certifying them. *See* Fed. R. Civ. P. 26(g). Certification implicitly imposes a duty upon the signing attorney to make "a reasonable inquiry into the factual basis of his response, request, or objection." *In re Delta/AirTran Baggage Fee Antitrust Litigation*, 846 F. Supp. 2d 1335, 1350 (N.D. Ga. 2012) (internal quotation marks and citation omitted). Where such a reasonable inquiry is not conducted, Rule 26(g) *requires* appropriate sanctions be assessed against "the signer, the party on whose behalf the signer was acting, or both." Fed. R. Civ. P. 26(g)(3); *see also id.* (if it determines that a discovery response has been certified in violation of the Rule, "without substantial

justification, the court, on motion or on its own, *must* impose an appropriate sanction" (emphasis added)).

Plaintiff's brief argues that his undisclosed, so-called "burner," Facebook accounts did not need to be disclosed because they were available "in a publicly viewable location on the internet for anyone to see; identified using John Brown's own name (and for two of [the additional accounts], a picture of his face)." If those profiles were so obvious and easy to discover, the Court must inquire why they were not revealed by plaintiff's counsel's required inquiry and identified notwithstanding the objection. *See* Fed. R. Civ. P. 34(b)(2)(C) ("An objection must state whether any responsive materials are being withheld on the basis of that objection"); *In re Delta/AirTran Baggage Fee Antitrust Litigation*, 846 F. Supp. 2d at 1350 (imposing sanctions under Fed. R. Civ. P. 26(g) where late disclosure of documents demonstrated the responding party "did not conduct a reasonable inquiry into the factual basis for its implicit representations" and, thereby, "falsely certified that its discovery responses were correct and complete."); *see also Venator v. Interstate Resources, Inc.*, 2016 WL 1574090, at * 8 –* 13 (S.D. Ga. Apr. 15, 2016) (discussing then "reasonable

inquiry" requirement and the respective duties of parties and their counsel).

"'The decision whether to impose sanctions under Rule 26(g)(3) is *not discretionary*,' and '[o]nce the court makes the factual determination that a discovery filing was signed in violation of the rule it must impose 'an appropriate sanction.'" *Kipperman v. Onex Corp.*, 260 F.R.D. 682, 698 (N.D. Ga. 2009) (quoting *Chaudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1372 (11th Cir. 1997)) (alteration in original) (emphasis added). However, the Rule only mandates sanctions when the violating certification lacks "substantial justification." Fed. R. Civ. P. 26(g)(3). It may well be that such justification exists in this case. In order to determine whether the omitted disclosure of the existence of the "publicly viewable" Facebook accounts was substantially justified, notwithstanding the reasonable-inquiry requirement, plaintiff and the attorney who signed the responses, R. Brian Tanner, are **DIRECTED** to respond within thirty days of the date of this Order and **SHOW CAUSE** why sanctions, pursuant to Rule 26(g)(3), should not be imposed.

## IV. CONCLUSION

In order to get this case back on track, defendant's motion is **GRANTED, in part**, and **DENIED, in part**, without prejudice to refiling. Doc. 30. Plaintiff is **DIRECTED** to produce data from his Facebook account(s) for the period of January, 2018 through the present, as requested in Request No. 16 of Defendant's First Request for Production of Documents, *see* doc. 30-2 at 7, no later than seven (7) days from the date of this Order. Further, plaintiff and attorney R. Brian Tanner are **DIRECTED** to respond to this Order within thirty days and **SHOW CAUSE** why sanctions should not be imposed, pursuant to Federal Rule of Civil Procedure 26(g).

**SO ORDERED**, this 15th day of March, 2021.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA