IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| JOHN BROWN, JR., and JAVONNA BROWN, | |
| Plaintiffs, | CIVIL ACTION NO. 4:19-cv-00303 |
| v. | |
| SSA ATLANTIC, LLC., | |
| Defendant. | |

**<u>O R D E R</u>**

This case arises out of a vehicular collision that injured Plaintiff John Brown, Jr.,[1] while he was working as a jockey truck driver.  (Doc. 14.)  Brown sued SSA Atlantic, LLC ("SSA"), asserting that negligent conduct by one of its employees caused his injuries and that SSA is liable under the doctrine of respondeat superior.  (<u>Id.</u> at pp. 3–4.)  In addition, Brown's wife, Plaintiff Javonna Brown, asserts a loss of consortium claim.  (<u>Id.</u> at p. 4.)  Plaintiffs now seek partial summary judgment on the issue of liability for all of their claims.  (Doc. 31.)  SSA argues that summary judgment as to liability is inappropriate because there are factual issues concerning Brown's comparative fault.  (Doc. 36, pp. 10–15.)  For the following reasons, the Court **DENIES** Plaintiffs' Motion for Partial Summary Judgment.  (Doc. 31.)

---

[1] John Brown, Jr.'s wife, Javonna Brown, is also a Plaintiff in this case.  However, for ease of reference, throughout this Order, the Court will refer to Plaintiff John Brown, Jr. as "Brown."

# BACKGROUND

I.  **Factual Background**

On August 13, 2019, Brown was working as a jockey truck driver for Ports America. (Doc. 36-1, pp. 11, 15.) As part of his job, Brown reported to the TICO jockey truck yard. (Id. at p. 15.) After arriving at the truck yard, he entered the cab of one of the trucks. (Id.) However, he saw a seat cushion inside the cab, which he took to mean that someone else was already using the truck. (Id. at p. 16.) Brown then "backed out of the cab" and stood on "the portion [of the truck] between the bed and the cab" called the "grate." (Id.) At no time did Brown check to see if the truck's parking brake was engaged or attempt to engage the parking brake himself. (Id. at p. 19.) While still standing on the grate, Brown spoke with a TICO employee who was near the truck. (Id. at p. 17.) At this time, according to Brown, he was facing the cab of the truck and looking left of center towards the TICO employee. (Id. at p. 18.)

While Brown was standing on the grate of the truck, Byron Childs was driving a truck for his employer, Defendant SSA. (Doc. 36-7, p. 2.) Childs began his shift driving one truck, but later switched to another truck because he noticed problems with the first truck's brakes. (Doc. 36-2, p. 5.) After switching, Childs realized that he had left his seat cushion in the first truck and drove back to retrieve it. (Id. at p. 6.) As he drove back to the first truck, Childs saw Brown standing on the first truck's grate holding a cooler. (Id. at p. 6; doc. 36-7, p. 3.) According to Childs, he tried "to park next to" Brown but "misjudged" the amount of space needed to do so. (Doc. 36-2, p. 6.) Childs then "realized [he was] too close" and collided with the first truck while Brown was standing on it. (Id.) Brown then fell down "on [his] back." (Doc. 36-1, p. 18.) During his deposition, Childs stated that if he "had a chance to go back and do [it] again," he would make "sure that [he] gave the tractor-trailer enough clearance when [he] was driving around . . . so [he]

could avoid hitting [Brown's] trailer or hitting anything." (Doc. 36-2, p. 9.) Brown is unsure how fast Childs was driving at the time of the collision, (doc. 36-1, p. 20), while Childs says that he was "[n]ot [traveling] very fast . . . . maybe 5 miles an hour," (doc. 36-2, p. 6). Brown states that the truck he was standing on traveled "[p]robably 20 . . . to maybe 30 feet" after Childs hit it. (Doc. 36-1, p. 19.) Childs, however, estimates that the truck only "moved maybe about 5 feet at the most" after he hit it. (Doc. 36-2, p. 6.)

## II.   Procedural History

Plaintiffs initially filed this action in the State Court of Chatham County. (Doc. 1-1.) SSA subsequently removed the action to this Court. (Doc. 1.) Plaintiffs then filed an Amended Complaint. (Doc. 14.) On September 30, 2020, Plaintiffs filed their Motion for Partial Summary Judgment, seeking summary judgment as to SSA's liability. (Doc. 31.) SSA filed a Response, (doc. 36), and Plaintiffs filed a Reply, (doc. 40).

## STANDARD OF REVIEW

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. See Williamson Oil Co. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party must identify the portions of the record which establish that there are no "genuine dispute[s] as to any

3

material fact and the movant is entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). "If the movant bears the burden of proof at trial, that party 'must show that, on all the essential elements of its case, . . . no reasonable jury could find for the nonmoving party.'" Hooters of Augusta, Inc. v. Am. Glob. Ins. Co., 272 F. Supp. 2d 1365, 1370 (S.D. Ga. 2003) (quoting United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Counties in State of Ala., 941 F.2d 1428, 1438 (11th Cir. 1991)). "If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the nonmoving party, in response, 'come[s] forward with significant, probative evidence demonstrating the existence of a triable issue of fact.'" Four Parcels, 941 F.2d at 1438 (alteration in original) (quoting Chanel, Inc. v. Italian Activewear of Fla., Inc., 931 F.2d 1472, 1477 (11th Cir. 1991)).

In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Cnty., 630 F.3d 1346, 1353 (11th Cir. 2011) (citing Rodriguez v. Sec'y for Dep't of Corr., 508 F.3d 611, 616 (11th Cir. 2007)). However, "facts must be viewed in the light most favorable to the non-moving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. (citation and emphasis omitted).

## DISCUSSION

Plaintiffs argue that "[t]he facts of this case strongly support granting [their] motion for summary judgment on [the issue of] liability." (Doc. 31, p. 4.)  SSA responds that partial "[s]ummary judgment on liability is improper because the jury must apportion fault between the

4

parties."[2] (Doc. 36, p. 10.) The Court will first determine the correct choice of law to be applied to Plaintiffs' claims. The Court will then turn to whether Plaintiffs are entitled to summary judgment on the issue of liability. For the following reasons, the Court **DENIES** Plaintiffs' Motion for Partial Summary Judgment. (Doc. 31.)

I.     **Choice of Law**

In their briefs, Plaintiffs and SSA cited cases applying Georgia law, (doc. 36, pp. 11–14; doc. 40, pp. 2–3), but they also cited cases from the Southern District of Florida that rely on Florida substantive law, (doc. 36, pp. 10–11; doc. 40, p. 2). Therefore, the Court must determine whether Georgia law, Florida law, or another state's substantive law governs Plaintiffs' claims. In this diversity action, the Court must apply the choice-of-law rules of its forum state of Georgia to determine which state's substantive laws apply. Boardman Petroleum, Inc. v. Federated Mut. Ins. Co., 135 F.3d 750, 752 (11th Cir. 1998). Plaintiffs' claims resound in tort law. (Doc. 14, pp. 3–4.) In tort actions, "Georgia continues to apply the traditional choice of law principles of *lex loci delicti*." nVision Global Tech. Sols., Inc. v. Cardinal Health 5, LLC., 887 F. Supp. 2d 1240, 1271 (N.D. Ga. 2012) (internal quotations and citation omitted). "[T]he rule of *lex loci delicti* . . . requires application of the substantive law of the place where the tort or wrong occurred." Carroll Fulmer Logistics Corp. v. Hines, 710 S.E.2d 888, 890 (Ga. Ct. App. 2011), *overruled on other grounds by* Auld v. Forbes, 848 S.E.2d 876, 881–82 (Ga. 2020). Here, neither party disputes that the collision that gives rise to Plaintiffs' claims took place at the Port of Savannah in Chatham

---

[2] In its responsive brief, SSA also argued that granting Plaintiffs partial summary judgment would inappropriate because "Brown spoliated evidence, rendering summary judgment improper." (Doc. 36, p. 8.) Since the time that brief was filed, however, the Magistrate Judge has denied without prejudice SSA's motion for spoliation sanctions. (Doc. 44.) Following that Order, the Court reopened discovery to allow Defendant the opportunity to obtain the materials in question by way of subpoena to a third party. (Doc. 49.) Moreover, because the Court is denying summary judgment on other grounds, the Court need not address this argument.

County, Georgia. (See doc. 14, p. 2; doc. 36, p. 2.) Accordingly, the Court finds that Georgia substantive law applies to Plaintiffs' tort claims.

## II.     Plaintiffs' Substantive Claims

In their Motion for Partial Summary Judgment, Plaintiffs argue that "[t]he plain facts in this case leave no material facts in dispute except for damages[] and show[] that Defendant is liable for Plaintiffs' injuries." (Doc. 31, p. 4.) Plaintiffs' Amended Complaint brings five claims in total: respondeat superior (Count I), negligence (Count II), negligence per se (Count III), loss of consortium (Count IV), and damages (Count V). (Doc. 14, pp. 3–4.) Plaintiffs' respondeat superior claim, loss of consortium claim, and damages claim are all contingent upon Brown's claims for negligence. See Hobbs through Eagle v. Integrated Fire Prot., Inc., 850 S.E.2d 256, 261 (Ga. Ct. App. 2020) ("Under the doctrine of respondeat superior, an employer can be held vicariously liable for the negligence of an employee when the employee is acting within the course and scope of his employment.") (quoting Yim v. Carr, 827 S.E.2d 685, 691 (Ga. Ct. App. 2019)); Canberg v. City of Toccoa, 567 S.E.2d 21, 23 (Ga. Ct. App. 2002) ("One spouse's claim for the loss of the other spouse's consortium derives from the right of the other spouse to recover for her injuries."). Thus, in order for Plaintiffs to succeed on their Motion for Partial Summary Judgment as to the liability issue for the derivative claims, they will need to show that partial summary judgment is appropriate on the liability issue for the negligence claims. Accordingly, the Court will first examine Plaintiffs' negligence claim (Count II) and then the negligence per se claim (Count III).

### A.     Plaintiffs' Negligence Claim

Plaintiffs argue that the evidence in the case establishes that "Childs[] negligently operated his jockey truck and struck Plaintiff, causing him to immediately fall hard on the back of a steel trailer." (Doc. 31, p. 5.) They assert that partial summary judgment is appropriate because there

are "no material facts in dispute" as to liability, which encompasses all the elements of negligence "except for damages." (Id. at p. 4.)   Under Georgia law, to make out a negligence claim, a plaintiff must show "the existence of a legal duty; breach of that duty; a causal connection between the defendant's conduct and the plaintiff's injury; and damages." Sheaffer v. Marriott Int'l, Inc., 826 S.E.2d 185, 188 (Ga. Ct. App. 2019) (quoting Boller v. Robert W. Woodruff Arts Ctr., Inc., 716 S.E.2d 713, 716 (Ga. Ct. App. 2011)).  Thus, in order for partial summary judgment to be proper in this case, there must be no genuine dispute of material facts as to the elements of duty, breach, and causation.

"In any negligence case, the threshold issue is whether, and to what extent, 'the defendant owes the plaintiff a duty of care.'" Ireland v. Williams, 830 S.E.2d 538, 541 (Ga. Ct. App. 2019) (quoting Diamond v. Dep't of Transp., 756 S.E.2d 277, 281 (Ga. Ct. App. 2014)).  "The existence of a legal duty is a question of law for the court." Rasnick v. Krishna Hosp., Inc., 713 S.E.2d 835, 837 (Ga. 2011).  "The duty can arise either from a valid legislative enactment, that is, by statute, or be imposed by a common law principle recognized in the caselaw." Rasnick v. Krishna Hosp., Inc., 713 S.E.2d 835, 837 (Ga. 2011).  Plaintiffs' briefs do not specify what legal duty they believe that Childs violated.  However, a review of the applicable caselaw shows that Georgia imposes on all drivers "the duty to exercise ordinary care under the circumstances." Rios v. Norsworthy, 597 S.E.2d 421, 424 (Ga. Ct. App. 2004).

Next, the Court turns to the issue of whether Childs negligently breached his duty to exercise ordinary care.  As an initial matter, Georgia law strongly disfavors removing the issue of negligence from a jury. See Ga. Dep't of Hum. Res. v. Bulbalia, 694 S.E.2d 115, 118 (Ga. Ct. App. 2010) ("[Q]uestions of negligence . . . are peculiarly matters for the jury, and a court should not take the place of the jury in solving them, except in plain and indisputable cases.") (alteration

in original) (quoting Bussey v. Dawson, 160 S.E.2d 834, 836 (Ga. 1968)); Harper v. Plunkett, 176 S.E.2d 187, 188 (Ga. Ct. App. 1970) ("It has been held time and again that all questions of negligence are for the jury's determination except in plain and palpable cases."). Plaintiffs argue that this case is one of those plain and indisputable cases because Childs' deposition testimony shows that he acted negligently. (Doc. 31, p. 5.) Specifically, they point to Childs' acknowledgment that, if he could redo the events of August 13, 2019, he would have given Brown's "tractor-trailer enough clearance . . . so [he] could avoid hitting [Brown's] trailer or hitting anything." (Doc. 36-2, p. 9.)

In response, SSA argues that partial summary judgment is not appropriate because even if Childs acted negligently, Brown's own actions "constituted contributory or comparative negligence and defeat[] summary judgment." (Doc. 36, p. 12.) "Georgia does not adhere to the common-law principle of contributory negligence whereby any negligence whatsoever on the part of the plaintiff bars his recovery, but 'follows instead the comparative-negligence doctrine, which merely limits the amount of recovery.'" Bridges Farms, Inc. v. Blue, 480 S.E.2d 598, 598–99 (Ga. 1997) (quoting Lassiter v. Poss, 70 S.E.2d 411, 414 (Ga. Ct. App. 1952)). This rule is codified in O.C.G.A § 51-12-33. That statute provides in part that, "[i]n assessing percentages of fault, the trier of fact shall consider the fault of all persons or entities who contributed to the alleged injury or damages, regardless of whether the person or entity was, or could have been, named as a party to the suit." O.C.G.A. § 51-12-33(c). In interpreting the statute, the Supreme Court of Georgia has stated:

> In subsection (c), "fault" is used with reference to the "fault of all persons or entities who contributed to the alleged injury or damages," and so, it includes not only the "fault" of nonparties, but also the sort of "fault" attributable to plaintiffs under subsection (a), as well as the "fault" attributable to defendants with liability under subsection (b).

Zaldivar v. Prickett, 774 S.E.2d 688, 694 (Ga. 2015). Thus, to determine whether partial summary judgment is appropriate on the issue of liability, the Court must also examine whether genuine disputes of material fact exist as to Brown's potential comparative negligence. Cf. Head v. CSX Transp., Inc., 524 S.E.2d 215, 218 (Ga. 1999) ("[W]e held that where comparative negligence is an issue at trial, liability and damages are so 'inextricably joined' that a new trial on damages only is impermissible.") (quoting Bridges Farms, Inc., 480 S.E.2d at 599).

Here, SSA asserts that Brown acted negligently with regard to his own safety in three ways. (Doc. 36, pp. 11–15.) First, SSA argues that "Brown spent an extended period conversing with a fellow workman in the most dangerous place he possibly could have—exposed on the back of a jockey truck platform, positioned in a high-traffic area at the start of a shift." (Id. at p. 12.) The record shows that Brown was standing on the truck's grate while talking to a TICO employee at the time of the accident.[3] (Doc. 36-1, p. 17.) Under Georgia law, all individuals are "bound at all times to exercise ordinary care for [their] own safety, even before the negligence of another is or should be apparent." Southland Butane Gas Co. v. Blackwell, 88 S.E.2d 6, 9 (Ga. 1955). Georgia law also provides that questions of a plaintiff's comparative negligence should normally be decided by a jury even when there is only minimal evidence of a plaintiff's negligence. See Sutton v. Justiss, 659 S.E.2d 903, 905 (Ga. Ct. App. 2008) ("Like the question of a defendant's negligence, however, the question of a plaintiff's comparative negligence is generally 'not susceptible [to] summary adjudication but should be resolved by trial in the ordinary manner.'") (alteration in original) (quoting Robinson v. Kroger Co., 493 S.E.2d 403, 408 (Ga. 1997)); Walker v. Bruno's, Inc., 492 S.E.2d 336, 338 (Ga. Ct. App. 1997) ("A charge on comparative negligence

---

[3] Brown agreed, during his deposition, that he was "standing on the grate" of the truck, (doc. 36-1, p. 17), in contradiction to the Amended Complaint, which alleges that, "[a]s a result of the tremendous impact, Plaintiff John Brown, Jr.[,] was ejected through the back doors of the jockey truck cab, ultimately landing on the flatbed trailer," (doc. 14, p. 2).

. . . requires only the existence of slight evidence from which a jury could infer negligence."). Accordingly, a jury could find that Brown acted negligently by standing on the truck's grate and talking to a TICO employee instead of immediately getting off the truck.

SSA also argues that "a fact issue exists about whether Brown was adequately keeping a lookout" and that his failure to pay attention could also constitute comparative negligence. (Doc. 36, p. 13.) According to Brown's deposition testimony, he was facing forward towards the cab of the trailer and looking "to the left of center" towards the TICO employee to whom he was speaking. (Doc. 36-1, p. 18.) He also stated that he "didn't see" Childs before the collision. (Id. at p. 19.) The Supreme Court of Georgia has held that for individuals to exercise "ordinary care for [their] own safety, looking continuously in all directions is not required in all circumstances." Ellington v. Tolar Constr. Co., 227 S.E.2d 336, 339 (Ga. 1976). However, Georgia law also makes clear that what constitutes "a reasonable lookout depends on all the circumstances at the time and place." Id. (citation and internal quotations omitted). Here, based on the facts in the record, a jury could find that Brown did not exercise ordinary care because he did not keep a reasonable lookout while standing on the truck's grate in an area with other trucks moving nearby.

Finally, SSA asserts that there is "a fact issue as to whether the parking brake was engaged" on the truck Brown was standing on and that this also goes to Brown's negligence. (Doc. 36, p. 13.) Brown admitted during his deposition that he "did not make sure the parking brake was engaged" when he initially entered the truck. (Doc. 36-1, p. 19.) There is also a related dispute of fact concerning how far the truck moved after the collision. Brown estimates that it moved "20 to maybe 30 feet," (id.), while Childs states that "it moved maybe about 5 feet at the most when my trailer hit his and he fell back," (doc. 36-2, p. 6). Accordingly, a jury could find that Plaintiff

Brown acted negligently by failing to engage the parking brake and that this contributed to how far the truck moved and the severity of the accident.

Plaintiffs argue that the factual disputes surrounding Brown's own potential comparative negligence do not "render summary judgment inappropriate." (Doc. 40, p. 2.) In making this argument, Plaintiffs primarily rely upon a decision from the Southern District of Florida.[4] (Id. at pp. 2–3 (citing Ashworth v. United States, 772 F. Supp. 1268, 1274 (S.D. Fla. 1991)). As an initial matter, "a district judge's decision neither binds another district judge nor binds him." McGinley v. Houston, 361 F.3d 1328, 1331 (11th Cir. 2004). In addition, the district court in that case was applying Florida law not Georgia law. Ashworth, 772 F. Supp. at 1271. Finally, the facts of Ashworth are distinguishable to such a degree from the facts of this case that the Court does not find its reasoning persuasive. Ashworth involved a vehicular crash on a bridge where a United States Coast Guard seaman veered into the plaintiffs' lane; "[t]he collision occurred entirely within the [plaintiffs'] lane of travel and within the emergency lane to its west." Id. at 1270. The plaintiffs sued the United States as the seaman's employer and moved for summary judgment on the issues of negligence and comparative negligence. Id. In examining the motion, the court noted that it "fully appreciates that issues of negligence and comparative negligence should ordinarily be left

---

[4] Plaintiffs also briefly cite other cases besides Ashworth v. United States. (Doc. 40, pp. 2–3 (citing Clay v. Oxendine, 645 S.E.2d 553 (Ga. Ct. App. 2007) and Canady v. Wisenbaker Law Offs., P.C., 372 F. Supp. 2d 1379 (N.D. Ga. 2005))). While the trial courts in these cases granted partial summary judgment in favor of plaintiffs, neither case involved negligence, much less comparative negligence. See Clay, 645 S.E.2d at 554–55 (upholding trial court's decision to grant plaintiffs' motions for partial summary as to defendants' liability for violations of Georgia's anti-payday lending statute and the Georgia Industrial Loan Act); Canady, 372 F. Supp. 2d at 1384 (granting plaintiff's motion for partial summary judgment on defendant's liability under the Fair Debt Collection Practices Act). As neither of these cases involve issues of negligence (which Georgia law has repeatedly said should normally be determined by a jury), the Court does not find them controlling or even persuasive in this case. Finally, Plaintiffs cite two other Georgia cases to support the proposition that "[d]isputes as to immaterial facts do not preclude summary judgment." (Doc. 40, p. 3 (citing Upshaw v. Roberts Timber Co., 596 S.E.2d 679 (Ga. Ct. App. 2004) and Blair v. Ga. Baptist Child.'s Home & Fam. Ministries, Inc., 377 S.E.2d 21 (Ga. Ct. App. 1988)))). That principle is true as far as it goes, but Plaintiffs have not offered a compelling explanation as to why the several factual disputes surrounding Brown's potential comparative negligence are immaterial.

to a jury and should not normally be resolved on a motion for summary judgment." Id. at 1274. However, the court found that summary judgment was appropriate for several reasons. Id. at 1273–74. First, the government conceded in a pretrial conference that the seaman had negligently operated his vehicle. Id. at 1273. Second, with regard to comparative negligence, the court found that the plaintiffs could only have avoided the collision by either "travel[ing] head-on into oncoming vehicles in the northbound lane" or crashing "into the Seven–Mile Bridge's railing, either colliding with it and [the seaman's] vehicle or breaking through the protective barrier and plummeting into the Gulf of Mexico." Id. at 1274. Finally, the court also noted that "the government admitted that it had no identifiable factual theory addressing the government's position that the [plaintiffs] were comparatively negligent." Id.

Here, while there is evidence that Childs acted negligently, SSA has not conceded this issue in any pretrial conference or in any briefing, unlike the defendant in Ashworth. More importantly, this case is distinguishable from Ashworth because SSA has pointed to several questions of fact surrounding Plaintiff Brown, Jr.'s comparative negligence in the accident, unlike the Ashworth defendant, who "could not provide [the] court with any reasonable course of action by which [the plaintiffs] could have acted so as to either avoid the accident or ameliorate the damage." Id. In concluding that the plaintiffs' motion for partial summary judgment should be granted, the district court in Ashworth noted that, "[s]hould [the] court adopt the [defendant's] argument, it would appear that nearly every case of negligence would have to go to a jury on the issue of comparative negligence—whether or not the facts clearly establish that there is no factually viable theory to support comparative negligence." Id. However, here, given the several material factual disputes concerning Brown, Jr.'s potential negligence, there is no risk of establishing a troubling precedent of denying summary judgment merely because comparative fault on the part of a plaintiff has been

12

alleged.  Additionally, Plaintiffs have not cited any case where a Georgia court granted summary judgment on the issue of liability as to a negligence claim where questions of fact existed as to a plaintiff's contributory negligence.[5]  Indeed, denying summary judgment on Plaintiffs' negligence claims is in line with Georgia law's long-standing preference for having juries decide liability issues.  See, e.g., DeWaters v. City of Atlanta, 311 S.E.2d 232, 235 (Ga. Ct. App. 1983) ("As to plaintiff's motion for summary judgment on the issue of liability, [q]uestions of negligence, contributory negligence, cause and proximate cause, whose negligence, what negligence, including lack of care in avoiding the consequences of another's negligence, are, except in plain, palpable and indisputable cases, solely for jury determination.") (alteration in original) (citation and internal quotations omitted).  Accordingly, the Court **DENIES** Plaintiffs' Motion for Partial Summary Judgment on the issue of liability to the extent it is based on Plaintiffs' negligence claim.[6]  (Doc. 31.)

---

[5]  SSA does not cite O.C.G.A. § 51-12-33(g) in its brief, but that statute provides that "[n]otwithstanding the provisions of this Code section or any other provisions of law which might be construed to the contrary, the plaintiff shall not be entitled to receive any damages if the plaintiff is 50 percent or more responsible for the injury or damages claimed."  O.C.G.A. § 51-12-33(g).  Because there are genuine disputes of material fact concerning whether Brown's own negligence contributed to his fall, a jury could find that Plaintiffs are not entitled to any damages because Brown was at least 50 percent responsible for his injuries.  Thus, granting summary judgment to Plaintiffs on the issue of liability would improperly remove this factual determination from the jury.  This provides an additional reason to deny Plaintiffs' Motion.  (Doc. 31.)

[6]  Plaintiffs also cite an excerpt from SSA's expert witness Dr. Joshua Smith, which they claim shows that "Dr. Smith had to concede [that] nothing from his review of the case materials . . . indicates that Brown fell and injured himself in any way other than the way Brown described in his deposition." (Doc. 40, p. 2.)  In his deposition, Dr. Smith stated that "somebody hit the truck with another truck and caused him to fall over backwards, I believe, into the bed." (Doc. 36-5, p. 7.)  However, he then testified that he was "not 100 percent sure how it all went down, exactly." (Id.)  In addition, nothing in Dr. Smith's testimony changes the potential comparative negligence issues involving Brown's standing on the truck grate, maintaining a sufficient lookout while on the truck grate, and allegedly failing to engage the truck's parking brake.

### B. Plaintiffs' Negligence Per Se Claim

The Court next turns to Plaintiffs' negligence per se claim. (Doc. 14, pp. 3–4.) "It is well-settled that Georgia law allows the adoption of a statute as a standard of conduct so that its violation becomes negligence per se." Cent. Anesthesia Assocs. P.C. v. Worthy, 325 S.E.2d 819, 823 (Ga. Ct. App. 1984). Plaintiffs do not specifically address their negligence per se argument in their briefs. However, their Amended Complaint alleges that Childs was negligent per se for violating O.C.G.A. § 40-6-180. (Doc. 14, pp. 3–4.) This statute states that:

> No person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard for the actual and potential hazards then existing. Consistently with the foregoing, every person shall drive at a reasonable and prudent speed when approaching and crossing an intersection or railroad grade crossing, when approaching and going around a curve, when approaching and traversing a hill crest, when traveling upon any narrow or winding roadway, and when special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions.

O.C.G.A. § 40-6-180. The record shows that Brown did not see Childs at the time of the collision and does not know how fast he was traveling. (Doc. 36-1, p. 19.) In turn, Childs testified in his deposition that he was "[n]ot [driving] very fast," estimating that his speed was "maybe 5 miles an hour." (Doc. 36-2, p. 6.) A Georgia court has previously examined an older version of the Georgia code that regulated driving and stated that "[t]hese statutes merely furnish a general rule of conduct; and it is for the jury to determine in the light of all the attendant circumstances of the case, whether these statutory provisions have been violated." Malcom v. Malcolm, 144 S.E.2d 188, 191 (Ga. Ct. App. 1965) (internal citation omitted). The Court finds nothing in Georgia caselaw indicating that this general principal (that it is the jurors' province to determine a violation of a statutory provision regulating reasonable speed) has changed, even though the legislature has updated the language of the statutory text. Furthermore, Plaintiffs provide no argument for how Childs violated O.C.G.A. § 40-6-180 and, thus, failed to show why partial summary judgment on

that count is warranted. See Hornsby-Culpepper v. Ware, 906 F.3d 1302, 1311 (11th Cir. 2018) ("The party seeking summary judgment bears the initial burden to demonstrate the basis for its motion . . . ."). For these reasons, the Court **DENIES** Plaintiffs' Motion for Partial Summary Judgment to the extent it was based on Plaintiffs' negligence per se claim.[7]  (Doc. 31.)

## CONCLUSION

Based on the foregoing, the Court **DENIES** Plaintiffs' Motion for Partial Summary Judgment. (Doc. 31.)

**SO ORDERED**, this 3rd day of August, 2021.

_____
R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[7] Even if Plaintiffs had shown that summary judgment was appropriate as to negligence per se, that still would not warrant granting summary judgment on the issue of liability. Under Georgia law, "[n]egligence per se is not liability per se." Humphreys v. Kipfmiller, 515 S.E.2d 878, 881 (Ga. Ct. App. 1999); see also, Norman v. Jones Lang Lasalle Americas, Inc., 627 S.E.2d 382, 389 (Ga. Ct. App. 2006). As the Court has already explained, there are fact issues surrounding Brown's potential comparative negligence that prevent summary judgment on the issue of liability. (See Discussion Section II.A, supra.) As the Georgia Court of Appeals has explained:

> [N]egligence per se . . . is no greater as a matter of law than negligence as a matter of fact, and it is the right and province of the jury to determine the degree or amount of negligence attributable to each party and whose negligence is greater and whose and what negligence was the proximate cause of the injuries complained of. While an act defined by the law as negligence per se is not issuable, in the sense that no issue may be made as to the act being or not being negligence, yet it is still within the exclusive province of the jury to determine whether one shown to have been guilty of negligence per se, was guilty of greater negligence than another shown to have been guilty of some other kind of negligence per se or merely of negligence as a matter of fact and to compare the two and determine which is greater.

Johns v. Secress, 126 S.E.2d 296, 298–99 (Ga. Ct. App. 1962).